**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:17-cv-2453-PX |
| | * | |
| DAWN BENNETT, BRADLEY MASCHO, and DJB HOLDINGS, LLC, | * | |
| | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court is the motion for summary judgment in this civil enforcement action filed by Plaintiff United States Securities and Exchange Commission ("The SEC") and against Defendants Dawn J. Bennett and DJB Holdings, LLC. ECF No. 38. The time for responding to the motion has passed, and no hearing is required. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is GRANTED.

I.    **Background**

   A.    **Procedural History**

In this matter, the SEC alleges that Bennett and DJB Holdings violated §§ 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c); § 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and § 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The Court stayed the civil action pending the outcome of a companion criminal case in which Bennett was tried and convicted of securities fraud and conspiracy to commit securities fraud arising from the same alleged misconduct. ECF Nos. 14, 20, 29; *see United States v. Dawn J. Bennett*, No. PX-17-0472 (D. Md.) ("Criminal Action"), ECF Nos. 386, 491, 493. In the Criminal Action, the Court sentenced Bennett to twenty years' imprisonment,

followed by five years of supervised release and $14,504,290.00 in restitution to the victim-investors.  Criminal Action, ECF No. 493.  The United States Court of Appeals for the Fourth Circuit has since affirmed Bennett's conviction and sentence, and Bennett's petition for writ of certiorari to the United States Supreme Court has been denied.  *See id.*, ECF No. 554; *Dawn J. Bennett v. United States*, *cert. denied*, No. 21-5092 (Dec. 6, 2021).  On February 4, 2021, this Court lifted the stay in this case, and the SEC moved for summary judgment based on the evidence adduced at Bennett's criminal trial.  ECF No. 32, 38.  The Court briefly summarizes the trial record in the light most favorable to Bennett as the nonmoving party.

**B.  Evidence Presented at Criminal Trial**

For many years, Bennett enjoyed a successful career as a financial advisor in the Washington, D.C. area.  Through her firm, Bennett Group Financial Services ("BGFS"), Bennett built a loyal and lucrative client base.  Bennett's clients trusted her, and many considered her a friend.  ECF No. 38-3 ¶ 1, 3.

In 2010, Bennett launched a separate startup, DJB Holdings, LLC ("DJB Holdings"), an online business selling luxury sportswear.  *Id.* ¶ 4.  Co-defendant Bradley Mascho ("Mascho"), also a financial advisor, worked alongside Bennett at BGFS and DJB Holdings.  *Id.* ¶¶ 4–5.  In late 2014, BGFS hit on hard financial times, prompting Bennett to train her sights on finding investors for DJB Holdings.  Bennett specifically targeted her longstanding clients at BGFS to invest in DJB Holdings.  *Id.* ¶¶ 6–11.  To start, Bennett created false promotional materials and financial reports that inflated DJB Holdings revenues, grossly minimized its liabilities, and hid from investors the true risk profile of the company.  *Id.* ¶¶ 50–51.

Under the guise of raising revenues for DJB holdings, Bennett initially offered her clients the option to purchase a three-year convertible note ("Convertible Notes") with guaranteed

earnings of 15% on investments secured with purported inventory and Bennett's personal assets and options to purchase shares of DJB Holdings common stock.  *Id.* ¶¶ 8–16, 31.  Later, Bennett offered clients nine-month promissory notes ("Promissory Notes") with similarly favorable investment terms.  *Id.* ¶¶ 25–27.  Bennett also assured all potential investors that the Convertible and Promissory Notes were stable, fully liquid, and guaranteed to turn a handsome profit.  *Id.* ¶¶ 8–16, 56–62.  Neither the Convertible Notes nor the Promissory Notes were registered with the SEC as required.  *Id.* ¶¶ 17, 33.

All told, Bennett convinced 47 investors to invest over twenty million dollars in DJB Holdings.  ECF No. 38-3 ¶ 49.  Indeed, many turned over to Bennett their entire life savings, relying on her promises of healthy returns.  *Id.* ¶ 48.  But Bennett demonstrated little appetite for using the funds legitimately.  Instead, she sunk millions into her own personal passions—ritual blessing ceremonies in India, astrological gemstones, cosmetic surgery, pricey anti-aging treatment, and a private box-suite at the Dallas Cowboy's Stadium.  She also used roughly $2.5 million to pay personal credit card debt.  ECF No. 38-3 ¶¶ 71–75.  To be sure, Bennett did plow about $6 million into paying sham dividends or returning investments funds on demand for certain investors, but the remaining $14 million was spent on debts largely unrelated to DJB Holdings.  *Id.* ¶¶ 76–78.  In the end, Bennett could not fulfill the Convertible or Promissory Note terms for the lion's share of her investors.

The SEC now moves for summary judgment on all counts of the Amended Complaint, arguing that the criminal securities fraud convictions preclude Bennett from re-litigating identical civil claims.  ECF No. 38-2 at 11.  For the reasons discussed below, the Court agrees, and the motion must be granted.

## II.      Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences most favorably to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011).  Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another."  *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  Nor can an absent party gain advantage by failing to participate in the litigation, for even an unopposed motion requires that the Court independently determine whether "the moving party is entitled to summary judgment as a matter of law."  *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)) (emphasis omitted).  Where the evidence viewed most favorably to the non-movant leaves no doubt as to the result, then summary judgment is proper.  *See Custer*, 12 F.3d at 416.

## III.      Analysis

The SEC urges the Court to grant summary judgment on all claims because Bennett's criminal convictions preclude re-litigation on the merits.  ECF No. 38-2 at 13.  "It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."  *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951).  "Applying collateral estoppel 'forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate.'"  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004)

(quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)) (internal brackets omitted).  For the doctrine of collateral estoppel to apply, the moving party must demonstrate:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp.*, 355 F.3d at 326; *see also E. Assoc. Coal Co. v. Dir., Off. of Worker's Comp. Programs*, 578 F. App'x 165, 173 (4th Cir. 2014) (per curiam); *Polk v. Montgomery Cnty.*, 782 F.2d 1196, 1201 (4th Cir. 1986).

With this standard in mind, the Court turns to the civil claims.

### A.   Securities Fraud in Violation of § 10(b) and Rule 10b-5 of the Exchange Act & § 17(a) of the Securities Act

The Amended Complaint alleges two counts of securities fraud in violation of § 10(b) of the Exchange Act, Rule 10b-5 under the Exchange Act, and § 17(a) of the Securities Act.  ECF No. 38-2 at 13; ECF No. 38-23 ¶¶ 107–114.  For practical purposes, each requires the SEC to demonstrate that Bennett (1) made a false statement or omission; (2) of material fact; (3) with knowledge; and (4) in connection with the purchase or sale of securities.  *SEC v. Pirate Investor LLC*, 580 F.3d 233, 239 (4th Cir. 2009) (quoting *McConville v. SEC*, 465 F.3d 780, 786 (7th Cir. 2006)); *see* 15 U.S.C. §§ 78j(b), 77q(a); 17 C.F.R. § 240.10b–5.  "Section 17(a)(1) bars essentially the same behavior as Section 10(b), but in relation to the *offer* to sell securities, as well as to the sale of securities."  *SEC v. North Star Finance, LLC*, No. GJH-15-1339, 2019 WL 3860321, at *5 (D. Md. Aug. 15, 2019) (citing *SEC v. SBM Inv. Certificates, Inc.*, No. DKC

2006-0866, 2007 WL 609888, at *11 (D. Md. Feb. 23, 2007));  *see also Aaron v. SEC*, 446 U.S. 680, 697 (1980).

      As to the four criminal counts of securities fraud for which Bennett had been convicted, the jury necessarily found each element had been met with proof beyond a reasonable doubt. The criminal offense elements are the same as the civil claims.  *Compare* 15 U.S.C. §§ 77q(a) *and* 15 U.S.C. § 78j(b) *and* 17 C.F.R. § 240.10b-5 *with* ECF No. 38-10 (jury instructions); *see SEC v. Chapman*, 826 F. Supp. 2d 847, 857 (D. Md. 2011) (identical issues in civil enforcement under § 17(a) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5 thereunder after criminal conviction for securities fraud); *see also SEC v. Weed*, 315 F. Supp. 3d 667, 675 (D. Mass. 2018) (quoting *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007)) ("[T]he elements necessary to establish civil liability under Section 17(a) and  10(b) are identical to those necessary to establish criminal liability under Section 10(b).").  And in this case, so are the facts. The factual allegations in the Amended Complaint mirror the facts tried in the Criminal Action.  *See* ECF Nos. 38-3 (Statement of Material Undisputed Facts), 38-23 (Amended Complaint), 38-22 (Superseding Indictment); *see also SEC v. Resnick*, 604 F. Supp. 2d 773, 779 n.4 (D. Md. 2009).  Each action arises from Bennett's fraudulent solicitation and unregistered offer for sale of the Convertible and Promissory Notes under the auspices of DJB Holdings. *Compare* ECF No. 38-23 ¶¶ 21–65 *with* ECF No. 38-22, counts II–VI.  Each likewise focuses on how Bennett swindled the same investors out of $20 million dollars which she then dissipated. *Id.*  Thus, because the civil and criminal actions are near identical, the first element of the collateral estoppel analysis is satisfied.

      As to the second prong, where a jury finds a criminal defendant guilty, the "issues which were essential to the verdict must be regarded as having been determined by the

judgment." *Emich Motors,* 340 U.S. at 569.  But if the jury "could reasonably have grounded its

verdict on an issue other than the one in question," the issue was not essential to the judgment

and no preclusive effect applies.  *United States v. Fiel*, 35 F.3d 997, 1006 (4th Cir. 1994).  Here,

the jury could have only grounded its decision in those facts supporting the same allegations of

civil securities fraud claims.  Because no confusion exists in that regard, the Court easily finds

that the issues in this matter had been "actually determined" by the jury in the criminal matter.

*See* ECF No. 38-10 at 3.

Third, the prior matter clearly constitutes a final judgment.  *Chapman*, 826 F. Supp. 2d at

854 (citing *Smith v. SEC.*, 129 F.3d 356, 362 (6th Cir. 1997)) ("A criminal conviction is a final

judgment on the merits.").  The jury found Bennett guilty of all four securities fraud counts, the

Fourth Circuit affirmed the convictions, and certiorari was denied.  ECF Nos. 38-18, 38-20;

Criminal Action, ECF No. 554; *Dawn J. Bennett v. United States*, *cert. denied*, No. 21-5092

(Dec. 6, 2021)*.*  Bennett's convictions are thus final and valid.

Lastly, the record amply demonstrates that Bennett enjoyed "a full and fair opportunity"

to litigate the criminal matter.  *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016).  She had

several sets of attorneys who vigorously litigated every phase of the case.  She was given all

"protections of due process" accorded a criminal defendant and the record nowhere suggests that

she had been given anything but a "full and fair opportunity" to defend against the claims.

*Resnick*, 604 F. Supp. 2d at 780 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322

(1979)).  When considering that as the accused, Bennett stood to lose her freedom, she had every

motivation to forcefully defend against the charges.  This element, too, is satisfied.

In sum, the record, viewed most favorably to Bennett reflects that the civil and criminal

cases share the same legal elements and facts; the criminal action had been fully and fairly

litigated to final judgment during which Bennett had been given ample opportunity to defend herself. Thus Bennett and DJB Holdings[1] are collaterally estopped from contesting liability for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5 thereunder and § 17(a) of the Securities Act. *See SEC v. Farkas*, 557 Fed. App'x 204, 206 (4th Cir. 2014) (defendant estopped from denying liability in civil enforcement action after securities fraud conviction for same conduct); *Chapman*, 826 F. Supp. at 857 (defendant collaterally estopped from denying liability under § 10(b), Rule 10b-5, and § 17(a) after securities fraud conviction); *see also SEC v. Chan*, 465 F. Supp. 3d 18, 33–34 (D. Mass. 2020) ("Because the sole issues of importance in this pending civil matter have been conclusively determined by a jury, [the defendant] is collaterally estopped from re-litigating his liability under the SEC's claim that he violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5."). Summary judgment on the securities fraud claims must be granted.

**B.       Sections 5(a) and 5(c) of the Securities Act**

The Court next turns to the claimed violations of §§ 5(a) and 5(c) of the Securities Act. ECF No. 38-2 at 22. For these allegations, the SEC must demonstrate that Bennett (1) through means of interstate commerce; (2) directly or indirectly offered or sold; (3) securities unregistered with the Securities and Exchange Commission. *See* 15 U.S.C. §§ 77e(a), (c). If the SEC successfully proves these elements, the burden shifts to the defendant to demonstrate that an exception to the registration requirement applies. *SEC v. Ralston Purina Co.,* 346 U.S. 119, 126 (1953).

---

[1] Because the facts at trial established that Bennett essentially *was* DJB Holdings, her actions may be imputed to the corporation. Thus, the same analysis applies in granting summary judgment on all grounds as to DJB Holdings. *Teachers' Retirement System of LA v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007).

For largely the same reasons, Bennett's criminal securities fraud convictions preclude re-litigation of this claim.  All elements of the civil offense overlap with the criminal counts, as each require proof of sale of securities in interstate commerce.  *Compare* 15 U.S.C. §§ 77e(a), (c); *with* ECF No. 38-10 (jury instructions).  Second, the facts established at trial and necessary to the securities fraud convictions also satisfy the elements of the §§ 5(a) and (c) violations. Indeed, to find Bennett guilty of securities fraud, the jury had to unanimously conclude that she sold the unregistered securities to victims residing in multiple states, including Maryland, Ohio, and Virginia.  ECF Nos. 38-3 ¶ 6, 11, 17, 24; 38-10; *see* ECF No. 38-13 (promissory note stating it "has not been registered under the Securities Act of 1933"); *see also* ECF No. 38-25 (attestation of SEC custodian affirming DJB Holdings have no registered filings with the SEC); *see also SEC v. Karroum*, No. 17-cv-0187, 2018 WL 11230398, at *4 (E.D. Va. Feb. 2, 2018) (finding that defendant "used communication in interstate commerce, namely email to solicit unregistered investment offerings or securities within the meaning of [section 5 of] the Securities Act.").  The jury also expressly found that the Convertible and Promissory Notes are securities. The remaining elements of finality and adequacy of opportunity to defend are satisfied here for the same reasons discussed above. Thus, Bennett is collaterally estopped from challenging liability under §§ 5(a) and (c) here.  Summary judgment is granted in the SEC's favor.

## C.    Requested Relief

As relief, SEC requests permanent injunction that prohibits "Bennett and DJB Holdings from future violations of Section 17(a) of the Securities Act and Section 5 and 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder."  ECF No. 38-2 at 24, 26–27.  The SEC also seeks to disgorge $14,504,290.00, but urges that this relief should be deemed satisfied by Bennett's restitution order in the Criminal Action.  *Id.*  Both requests are properly made.  *See* 15

U.S.C. § 77t(b); *see, e.g.*, *SEC v. Lawbaugh,* 359 F. Supp. 2d 418, 424–26 (D. Md. 2005) (ordering permanent injunction and disgorgement order upon finding of default judgment for securities violation).

As to the requested injunction, the Court may prohibit "any person [who] is engaged or about to engage in any acts or practices which constitute or will constitute a [securities] violation." 15 U.S.C. § 77t(b); *Resnick*, 604. F. Supp. 2d at 781 (citing *Lawbaugh*, 359 F. Supp. at 424). The requested relief is proper where "a reasonable and substantial likelihood" exists that the defendant "if not enjoined, will violate securities laws in the future." *Chapman*, 826 F. Supp. 2d at 857. When reviewing a request for injunctive relief, the Court considers the degree to which the defendant knowingly and intentionally violated the securities laws; whether the violations were isolated or persistent; the defendant's self-recognition of wrongdoing or assurances of future compliance; and likelihood that she may commit future violations. *Lawbaugh*, 359 F. Supp. 2d at 424–25 (quoting *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980)).

The Court easily concludes the requested injunctive relief is warranted. Bennett, a well-educated and experienced investment advisor, was intimately familiar with the securities laws and purposely set out to break them. For years, she methodically defrauded dozens of investors— many of whom were quite sophisticated—by selling them unregistered securities. She showed little compunction to follow the Securities Act and demonstrated no remorse for having eviscerated her clients financially. ECF No. 38-3 ¶¶ 3, 43–48. Considering that her offenses were especially aggravated, protracted and calculated, the Court will permanently enjoin Bennett and DJB Holdings from future securities violations under § 10(b) of the Exchange

Act and Rule 10b-5 thereunder, §§ 5(a) and (c) of the Securities Act, and § 17(a) of the Securities Act.

As to disgorgement, the SEC's request is lawful and sound. *Lawbaugh*, 359 F. Supp. at 425 (citing *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F. 2d 90, 95-96 (2d Cir. 1978)); *see also Liu v. SEC*, 140 S. Ct. 1936 (2020) (disgorgement remains an appropriate equitable remedy under 15 U.S.C. § 78u(d)(5) so long as the ordered disgorgement does not exceed offender's profits). The Court had previously awarded in the criminal matter restitution in the amount of $14,504,290.00, made payable to the victims of Bennett's fraud. ECF No. 38-2 at 27; ECF No. 38-20. Disgorgement thus will be deemed satisfied through execution of the criminal restitution order. [2] ECF No. 38-2 at 27; *see* ECF No. 38-20.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. A separate order follows.

January 28, 2022                                              /s/
Date                                                         Paula Xinis
                                                             United States District Judge

---

[2] Evidence at trial strongly suggested that DJB Holdings is defunct with no assets. Nonetheless, Bennett committed this fraud through DJB Holdings. Thus, the Court will order relief as to both defendants jointly and severally. *See, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474–75 (2d Cir. 1996); *see also SEC v. Whittemore*, 659 F.3d 1, 9 (D.C. Cir. 2011) (citing *SEC v. Hughes Capital Corp.,* 124 F.3d 449, 455 (3d Cir.1997))(courts retain discretion to impose joint and several liability as to disgorgement order).